THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DISABILITY LAW CENTER OF VIRGINIA** )<br>1512 Willow Lawn Drive, Suite 100 )<br>Richmond, Virginia 23230 )<br>  )<br>        **Plaintiff,** )<br>  )<br>v.  ) **Case No. 7:19at99999**   7:19cv349<br>  )<br>**DEPAUL COMMUNITY RESOURCES** )<br>5650 Hollins Rd. )<br>Roanoke, Virginia 24019 )<br>  )<br>**SERVE: Michael J. Hertz, Woods Rogers PLC** )<br>  )<br>        **Defendant.** )<br>  ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

In this action the Plaintiff disAbility Law Center of Virginia ("dLCV") seeks a court order to compel the Defendant to provide records to the dLCV under the Developmental Disabilities Assistance and Bill of Rights Act (DD) Act, 42 U.S.C. §15001 *et seq*. The records concern the death of J. C., an individual with developmental disabilities. The dLCV is entitled to the requested records by law, which are necessary to complete its review of the individual's death and the efficacy of DePaul's internal investigation.

1. By way of background, there are three federal statutes requiring states to establish protection and advocacy (P&A) systems to protect persons with disabilities and advocate on their behalf. Those statutes are the Developmental Disabilities and Bill of Rights Act ("DD Act"), the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAIMI Act"), and the Protection and Advocacy of Individual Rights Act ("PAIR Act"). DD Act, 42 U.S.C. §§ 15001–

1

115 (2006); PAIMI Act, 42 U.S.C. § 10801–851 (2006); PAIR Act, 29 U.S.C. § 794e (2006). To receive federal funding under the PAIMI, PADD and PAIR Acts, states must have a P&A system.

## PARTIES

2. The dLCV is a private, non-profit organization that is the Commonwealth of Virginia's designated P&A system for persons with disabilities. Va. Code § 51.5-39.13.

3. The Defendant, DePaul Community Resources ("DePaul"), is located in Roanoke, Virginia, and is a provider of services to individuals with disabilities. The Defendant is subject to the record production provisions of the P&A statutes cited above.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1331, since the Plaintiff's federal claim is established by the DD Act, 42 U.S.C. § 15001 *et seq*.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1). DePaul Community Resources maintains its principle place of business at 5650 Hollins Road, Roanoke, VA 24019.

## STATEMENT OF FACTS

6. As noted above, through the DD Act, Congress established the P&A system to monitor and investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness with the enactment of the PAIMI Act in 1986. The scope of the P&A system was further expanded in 1993 when the PAIR Act was enacted.

7. The dLCV requested information from DePaul Community Resources to investigate the particular matter of J.C.'s death and for the purposes of monitoring and evaluating the quality of provider investigations into deaths of service recipients.

8. DePaul is a provider of services for individuals with developmental disabilities. DePaul is licensed by the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") to provide: Residential/Crisis Stabilization Service; Day Support Service; Supportive Services; Intensive In-Home Services, Outpatient Service, Sponsored Residential Home Service, Respite Services, and In-Home Respite Services.

9. As a condition of licensure, providers of licensed services are required to comply with the Rules and Regulations for Licensing Providers by the DBHDS. Effective September 9, 2018, all providers of licensed services are required to conduct a root cause analysis within "30 days of discovery of Level II and Level III serious incidents. The root cause analysis shall include at least the following information: (i) a detailed description of what happened; (ii) an analysis of why it happened, including identification of all identifiable underlying causes of the incident that were under the control of the provider; and (iii) identified solutions to mitigate its reoccurrence." See 12VAC35-105-160. A "serious incident" is "any event or circumstance that causes or could cause harm to the health, safety, or well-being of an individual." Any serious incident which results in the death of an individual is a Level III serious incident.

10. The dLCV sent its first request for relevant reports on December 13, 2018, and received partial documentation from DePaul on December 19, 2018.

11. The dLCV contacted DePaul counsel by phone conference on December 20, 2019, to discuss the request. Staff on the call agreed to refer the matter to dLCV's managing attorney in an effort to negotiate the disclosure of the internal investigation report.

12. On December 20, 2018, dLCV staff and Director for Legal Services Clyde Mathews conducted a telephone conference with DePaul counsel. In that conference and subsequent email communications, the parties negotiated in good faith.

13. On January 10, 2019, DePaul counsel indicated its preference that the dLCV rely upon the already disclosed information to carry out its protection and advocacy function. DePaul counsel also indicated that they were open to "a mutually acceptable approach that accounts for our waiver concerns."

14. On January 17, 2019, Director for Legal Services Clyde Mathews and Director for Litigation Steven Traubert conducted an additional phone conference with DePaul counsel. On that call, the dLCV agreed that it would complete its review of the documentation already provided by DePaul and would determine, in its discretion, its continued need for the report.

15. The dLCV met by telephone with DePaul counsel on March 28, 2019 and April 5, 2019 to inform them of its continued need for the report and negotiate delivery of the Root Cause Analysis (RCA) report to dLCV. DePaul continued to assert the work product privilege and express concerns about waiving that privilege, should it apply.

16. To address DePaul's privilege claim, on December 28, 2018, the dLCV offered to enter into a confidentiality agreement to protect the RCA from disclosure. In response, DePaul pointed out that such an agreement may nonetheless result in a waiver of the privilege as to third-parties if the RCA is deemed voluntarily provided to dLCV, even with an agreement between the parties to maintain any privilege. *See, e.g.*, *In re Mut. Funds Inv. Litig.*, 251 F.R.D. 185, 187 (D. Md. 2008) (finding "[t]he defendants' voluntary disclosure of otherwise protected material to the SEC and NYAG, despite the entry of a confidentiality agreement, results in waiver."); Fed. R. Evidence 502(e) ("An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order."); *cf.* Va. Code § 8.01-420.7(D) ("An agreement on the effect of the disclosure in a proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.").

17. The dLCV contends that the work product doctrine does not apply because the report was produced under a recently revised state regulation 12VAC35-105-60, (Exhibit A), that requires providers like DePaul to produce such reports in circumstances like this whether litigation is foreseen or not. *See Solis v. Food Employers Labor Relations Assoc.*, 644 F.3d 221, 231-32 (4th Cir. 2011)("'Materials prepared . . . pursuant to regulatory requirements'. . . do not constitute 'documents prepared in anticipation of litigation' protected by work product privilege")(*citing Nat'l union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). DePaul contends that the doctrine still applies despite any regulatory requirement, citing *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, 2013 Bankr. LEXIS 589, at *16-17 (Bankr. E.D. Va. 2013)(applying work product privilege to document in a highly regulated industry).

18. Even if work product were to apply, the dLCV contends its unique position as a federally mandated and federally funded protection and advocacy (P&A) organization for disabled persons grants it broad access to records such as those here. PADD Act 42 U.S.C. §§ 15001–115 (2006); 45 CFR 1386.22 & .25(b). As such, the dLCV contends it is uniquely entitled to this report despite the work product privilege. *Iowa Protection and Advocacy Services v. Rasmussen*, 206 F.R.D. 630, 643 (S.D. Iowa 2001)(holding that under the PADD Act a P&A agency was entitled to an investigative report "regardless of whether it is, in fact, covered by the work product doctrine"). Consequently, by operation of law, DePaul must produce the RCA to the dLCV, without waiving any privilege (should one apply) as to any other party. *See Disability Rights North Carolina v. Moses H. Cone Memorial Hosp.,* 2013 WL 4854316, at *4 (Sept. 11, 2013 M.D. N.C.)(ordering production of peer review records to P&A under companion statute but finding that defendant "has not waived its peer review privilege" because "Defendant is required to produce these records to Plaintiff as a matter of law").

19. To address the parties' respective concerns regarding production of the RCA, the dCLV and DePaul have agreed that DePaul will produce the RCA following the entry of a proposed Agreed Protective Order in accordance with Federal Rule of Evidence 502(d), which provides: "Controlling Effect of a Court Order. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." *Cf.* Va. Code § 8.01-420.7(C) ("A court may order that the privilege or protection is not waived by the disclosure connected with the litigation pending before the court, in which case the disclosure does not operate as a waiver in any other proceeding.").

## CAUSE OF ACTION

20. P&A access to records of individuals with developmental disabilities is outlined in detail in 42 U.S.C. § 15043 and 45 CFR § 1386.22.

21. The DD Act at 42 U.S.C. § 15043(I) provides that the P&A shall have access to "*all* records" (emphasis added) of any individual who is a client of the P&A system, or in other circumstances where the P&A is authorized.

22. The DD Act at 42 U.S.C. §15043(J)(ii) authorizes access to the records "*without consent from another party* in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability" […] "in any case of death of an individual with a developmental disability[.]" (Emphasis added.) The dLCV received a report of the individual's death and subsequently requested records from DePaul by mail on December 13, 2018.

23. Furthermore, 42 U.S.C. §15043(J)(ii) states that the P&A shall receive "immediate access, not later than 24 hours after the system makes such a request."

24. The regulations at 45 C.F.R. § 1386.25(b) specify that:

"[i]ndividual records to which P&A systems must have access under section 143(a)(2), (A)(i), (B), (I), and (J) of the Act (whether written or in another medium, draft, preliminary or final, including handwritten notes, electronic files, photographs or video or audiotape records) shall include, but shall not be limited to: (1) information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment. This includes records stored or maintained in locations other than the facility or program as long as the system has obtained appropriate consent consistent with section 105(a)(4) of the Act. The system shall request of facilities that in requesting records from service providers or other facilities on residents that they indicate in the release form the records may be subject to review by a system. (2) (2) Reports prepared by a Federal, State or local governmental agency, or a private organization charged with investigating incidents of abuse or neglect, injury or death. The organizations whose reports are subject to this requirement include, but are not limited to, agencies in the foster care systems, developmental disabilities systems, prison and jail systems, public and private educational systems, emergency shelters, criminal and civil law enforcement agencies such as police departments, agencies overseeing juvenile justice facilities, juvenile detention facilities, all pre - and post - adjudication juvenile facilities, State and Federal licensing and certification agencies, and private accreditation organizations such as the Joint Commission on the Accreditation of Health Care Organizations or by medical care evaluation or peer review committees, *regardless of whether they are protected by federal or state law*." (Emphasis added).

25. Under the statutes and regulations above, the dLCV is entitled to the production of the RCA regardless of whether the work product doctrine (or peer review privilege) applies.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court enter the proposed Protective Order to be submitted with a joint motion by the parties, under which:

1. DePaul shall produce a copy of the final RCA to dLCV following entry of the proposed Order;

2. DePaul's production of the RCA to dLCV shall not operate as a waiver of any privilege, including the work product privilege, and DePaul remains entitled to assert that privilege in any later proceeding;

3. The dLCV is uniquely entitled to receive the RCA even if work product or peer review privileges apply; and

4. The dLCV shall maintain the RCA as confidential to the extent required by law.

For the above-stated reasons, the Plaintiff disAbility Law Center of Virginia asks the Court to enter judgment in its favor.

Respectfully submitted,

THE DISABILITY LAW CENTER OF VIRGINIA

**Melissa A. Charnes**
Virginia Bar Number: 83738
Staff Attorney
Stephen Hall
Virginia Bar Number: 44132
Senior Staff Attorney
The disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
Telephone: 804-662-7242
Fax: 804-662-7057
[Email: Melissa.Gibson@dlcv.org]
[Email: Steve.Hall@dlcv.org]